### HEWES v. DRAPER CO.

(Circuit Court, D. Massachusetts. December 4, 1903.)

No. 1,482.

PATENTS—INFRINGEMENT—SHUTTLES FOR LOOMS.
    The Nason patent, No. 528,550, for a self-threading shuttle for looms, relates only to shuttles of the closed-eye class. As so construed and limited, *held* not infringed.

In Equity. Suit for infringement of letters patent No. 528,550, for a self-threading shuttle for looms, granted to Joseph H. Nason November 6, 1894. On final hearing.

Edward S. Beach, for complainant.

Richardson, Herrick & Neave and J. L. Stackpole, for defendant.

ALDRICH, District Judge. The patent in suit relates to a shuttle used in weaving cloth. There are many kinds of shuttles, and many devices have been patented. Generally speaking, shuttles used in weaving are divided into two classes; that is to say, open-eye shuttles are in one class, and closed-eye shuttles are in the other. The complainant's patent, which he claims is infringed, was dated November 6, 1894, and is known as the third Nason patent relating to shuttles. In the specification and claims, Nason describes his invention as an improvement on the shuttles described in his prior patents, and as consisting in a peculiar slanting groove, slanting outwardly and upwardly from the central longitudinal line, with its front end at the longitudinal line, and its rear end to one side thereof, through which the thread is guided to the feeding pin, and in the combination of a guide pin and a thread passage with the groove slanted inward from top to bottom. The patentee does not, in words, refer to the closed-eye feature of his earlier patents, but does make express reference to them in describing his improvement and the new combination; and we must therefore necessarily have reference to the earlier patents in order to see what kind of a shuttle was intended by the patent in question.

Nason, in his first patent, of May, 1891, both in his specification and claim, makes the cylindrical eye a prominent feature of his shuttle device; and in his second patent, of April, 1893, the same idea is found in the specifications and drawings. The claims of the patent in suit, as originally presented in the Patent Office, were broad enough to cover shuttles of the open-eye type; but the claims, as originally filed, were rejected as too broad, and the patentee thereupon substi-

tuted the present claims, supporting them with the argument that his invention was an improvement on that class of shuttles shown in his prior patents, in which a bight of thread is carried by a feeding pin through an eye with unbroken walls. So it would seem clear enough that the plaintiff's shuttle is in the class of closed-eye shuttles.

Under the circumstances, I think the complainant's patent in suit is limited to, and consists in, a peculiar slanting groove by which the thread is guided to the feeding pin, combined with the guide pin and thread passage with a groove slanted inward from top to bottom, whereby the thread is carried by a feeding pin through an eye with an unbroken wall.

The complainant's patent was not alone for a doubly-slanted groove. A claim based upon that single feature, quite likely, would not describe a patentable invention, because so slanting a groove as to make a track through which a thread or rope or chain shall be guided to a certain point is old. Indeed, the defendant's predecessors, George Draper & Sons, for a substantial part of 1891, used a shuttle in 12 of their looms at the Seaconnet Mills, which is illustrated by the shuttle referred to in the record as shuttle No. 33, which, while of the open-eye type, possessed the feature of a doubly-slanted groove. While this shuttle was subsequently supplanted by improved shuttles of the automatic type, it was fairly successful in practical operation.

The complainant in this case secured a patent by combining the feature of a doubly-slanted groove with several other elements in an ingenious way, to the end that the thread should be guided to and passed through the closed eye in the side of the shuttle.

The defendant suggests and urges several defenses, but apparently its chief reliance is upon the defense of noninfringement; and I think this defense is sustained. Holding this view, it is not necessary to consider the other defenses. I think the defendant's shuttle is of an entirely different type, and substantially different from the complainant's device in its practical operation of automatic threading. Used for the purpose for which it is used, it could not, in practice, employ the substantial combination involved in the complainant's patent. The defendant could not, in its automatic threading process, use a shuttle with an unbroken wall or cylindrical eye, and its shuttle does not form a bight of thread about a feeding pin. Its shuttle does, I think, employ what is equivalent to a doubly-slanted groove, but that feature alone is not the equivalent of the substantial combination involved in the complainant's patent. Moreover, the earlier Keeley patent of 1893 had a groove which inclined upwardly and outwardly away from the longitudinal center line of the shuttle, and the drawings suggest a groove somewhat diagonal to a center line drawn lengthwise of the shuttle.

Holding these views, the bill must be dismissed. Bill dismissed, with costs.